## SNODGRASS, Appellant, v. COPPLE et al.

### In Banc, April 29, 1907.

**APPELLATE JURISDICTION: Title to Real Estate: Homestead.** An adjudication, upon a motion to quash, that land levied upon under execution is defendant's homestead does not involve title to real estate, and therefore the appeal from a judgment adjudging that the land levied upon was defendant's homestead, is to the proper court of appeals. In determining whether or not homestead exists, the court begins with the necessary concessions that the title is vested in defendant; and a holding that homestead does or does not exist, does not divest that title. A sequence of a judgment that there is no homestead may be to divert defendant's title by sale under execution, but that would be an indirect, not a direct effect of the judgment. In arriving at that judgment, the court does not consider the question of title, but whether the statutory conditions are present which entitle the husband to homestead.

Per Graves, J., with whom Lamm and Woodson, JJ., concur.

1. **APPELLATE JURISDICTION: Homestead.** It is not a mere exemption, but an estate in lands, that vests in the head of a family, and it is not an exemption, but a life estate in lands, that vests in the widow at his death, as the statute declares; and as an adjudication of the existence of a homestead must necessarily determine the existence of that estate, and determine the inchoate right of the widow and children thereto, an appeal from a judgment on a motion to quash the execution on the ground that defendant had a homestead in the land levied upon, necessarily involves title to real estate, within the meaning of the constitutional provision governing appeals— as much so as would a suit in ejectment against the same defendant after sale of the land under execution, where the defense would be the existence of a homestead, and such suit would be appealable to this court alone.

2. ——— ———: **What is Title?** "Title to real. estate" means an estate for life or for years, as well as a fee simple interest.

3. ———: ———: **Questions Involved.** Not simply such questions as, is defendant the head of a family? are involved in the homestead inquiry, but the ultimate question is, does defendant have a homestead? And that means, does, defendant have a vested estate in the lands? A homestead interest, as created by the statute, is an interest in real estate; and that being the fact, title to real estate is involved in any litigation that determines the existence of a homestead.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander,* Judge.

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*D. E. Adams* for appellant.

*J. M. Davis & Sons* for respondents.

VALLIANT, J.—This cause comes before us at this time on a motion to transfer it to the Kansas City Court of Appeals. The appeal was taken to this court on the theory that title to real estate was involved; if that theory is not correct, then since there is no other issue in the case to bring it within the jurisdiction of this court, we have no jurisdiction of it and the motion to transfer must be sustained.

This is the case: Execution issued on a judgment in favor of plaintiff against defendant and it was by the sheriff levied on certain real estate which the defendant claimed to be exempt from execution because it was his homestead; defendant moved to quash the levy, plaintiff in opposition contended that defendant had abandoned the premises as a homestead. The court heard evidence pro and con and found the issue in favor of defendant, adjudging that the real estate in question was the homestead of defendant and therefore sustained the motion to quash the levy. From that judgment this appeal was taken by the plaintiff.

203 Sup—31

Is title to real estate involved?

In Price v. Blankenship, 144 Mo. l. c. 208, it was said: "To give this court jurisdiction under section 12 of article 6 of the Constitution, because the title to real estate is involved, it must appear that the title to real estate will, in some way, be directly affected by the judgment to be rendered in the case," and that rule we have repeated several times since and we still adhere to it. Unless, therefore, title to real estate will be directly affected by the judgment to be rendered in this case this court has no jurisdiction of the appeal.

There is no doubt but that the judgment to be rendered will be a direct adjudication of the defendant's claim of a homestead in the real estate covered by the levy; as between him and the plaintiff it will determine whether or not he had a right to hold the property exempt from the plaintiff's execution. If right to exemption under the Homestead Statute is title to real estate, then title to real estate is involved in this suit, otherwise not.

There have been several cases before this court in which this question has appeared but it appears in more direct form in this case than in any previous one. Perhaps it will help to elucidate the subject to make a brief reference to the former cases.

McAnaw v. Matthis, 129 Mo. 142, came up for review of an order of the circuit court sustaining a motion to set aside a sale of real estate under execution. It was a money judgment rendered by a justice of the peace, appeal to the circuit court, appeal dismissed, return of execution in justice's office by the constable *nulla bona,* transcript of justice's judgment filed in the office of the circuit clerk, execution from that office, levy and sale of the real estate by the sheriff; the motion to quash the levy and sale was on several grounds going to challenge the validity of the judgment of the justice, the lack of authority in the circuit clerk to is-

sue the execution, and that no notice of the issuance of
the execution was served on the defendant. This court
decided that the judgment of the justice was valid,
that the execution issued in conformity to the law and
that no notice to defendant of its issuance was neces-
sary, he being a non-resident of the county, and there-
fore the motion to set aside the sale should be over-
ruled. Thus we see there was no question of title to
real estate in that case at all, the questions were merely
as to the validity of the justice's judgment, the regu-
larity of the proceedings and the necessity of notice.
The defendant's real estate was only incidentally af-
fected as it might have been by any money judgment
rendered against him. The appeal in that case had in
the first instance been taken to the Kansas City Court
of Appeals and that court sent it here on the idea that
title to real estate was involved, and when here no
question as to jurisdiction was raised by the counsel
and there is no discussion of the subject in the opinion.
The taking of jurisdiction of the case by this court
appears to have been an oversight. That case was de-
cided in Division No. 1 of this court.

St. Louis Brewing Association v. Howard, 150 Mo.
445, was also a case in which there was no issue which
would give this court jurisdiction unless the question
of homestead or no homestead was one involving title
to real estate, yet this court, Division No. 1, entertained
jurisdiction of the case, citing McAnaw v. Matthis as
authority for so doing. In that case there was a mo-
tion to set aside and quash a sale of over 400 acres of
land under execution, on the ground that defendant
was entitled to a homestead in it. The jurisdiction of
the court was not challenged and there was no discus-
sion of the subject.

Afterwards, Stinson v. Call, 163 Mo. 323, came be-
fore Division No. 2, involving only a question of home-
stead exemption and the court in deference to what was

said in McAnaw v. Matthis entertained jurisdiction, but there was no question of jurisdiction raised in the case and no discussion of the subject. There was this difference, however, between the last-cited case and the one first cited: in the later case the trial court had sustained the motion to set aside the sale of the land under execution on the ground that the land was the defendant's homestead. This court on review of the case held that the defendant did not have a homestead in the land, but affirmed the judgment setting aside the sale under execution on another ground. The motion to set aside that sale is not fully set out in the report but if it fairly tendered the issue of homestead or no homestead and if the judgment of the court was directly responsive to that issue there was a jurisdictional question in the case that distinguished it from the McAnaw-Matthis case and would bring it very close to the facts of the case at bar.

In State ex rel. Reed v. Elliott, 180 Mo. 658, the judgment was for city taxes on certain land of defendant in the sum of $76.82 and the same was declared to be a lien on the land. After execution and sale the defendant at a subsequent term moved to set aside the judgment and the sale on certain grounds specified, the motion was overruled and an appeal was taken to the Kansas City Court of Appeals, that court sent the cause here on the ground that title to real estate was involved. But this court was of the opinion that notwithstanding a lien on the land was declared yet there was no title to real estate involved and therefore returned the case to the Court of Appeals. The court in that case, Division No. 1, said: "And the reason is that in all such cases the title is necessarily conceded to be in the defendant, for otherwise the plaintiff would not be entitled to a lien against the land in that suit, and therefore no judgment that could be rendered in the case could divest the title out of the defendant." In the

course of the opinion in that case McAnaw v. Matthis is discussed and overruled.

Lawson v. Hammond, 191 Mo. 522, was certified to this court by the St. Louis Court of Appeals under the authority of McAnaw v. Matthis, on the idea that title to real estate was involved. In that case a general execution had issued on a money judgment against the defendant and the sheriff had levied the same on a tract of fifty-three acres of defendant's land on which, according to the motion, there was an incumbrance of $800 and in which also the defendant claimed a homestead exemption. The defendant moved to quash the levy on the grounds that he was entitled to a homestead in the land, and that he had requested the sheriff to appoint commissioners to set aside his homestead but the sheriff refused. The trial court heard the evidence, found that the defendant was entitled to a homestead and sustained the motion to quash the levy. This court held that title to real estate was not involved in that case and for that reason returned it to the St. Louis Court of Appeals. In the opinion in that case McAnaw v. Matthis is again discussed and disapproved and Stinson v. Call, supra, which followed the McAnaw case was also overruled.

The difference between Lawson v. Hammond and this case is that there the defendant in execution claimed not that all the land levied on was his homestead but that he was entitled to a homestead in the land, that he had requested the sheriff to appoint commissioners to set it off to him but the sheriff had refused the request and was proceeding to sell the whole tract; the plaintiff in execution denied the alleged facts in which the claim of homestead was founded, the trial court found that issue for the defendant and quashed the levy. In that case although in the issues of fact joined on the motion there was a question of homestead or no homestead yet that motion would have been sus-

tained or overruled without a final adjudication that a particular piece of real estate was or was not the defendant's homestead.

In Moore v. Stemmons, 192 Mo. 46, there was a motion to quash an execution on the grounds that the judgment was void, that the peculiar title of defendants as trustees was not subject to sale for plaintiff's debt, that the title was held by defendants in trust for the Methodist Episcopal Church of the United States and not for the particular church in Carthage. The trial court overruled the motion and defendants brought the cause here by appeal, but this court was of the opinion that title to real estate was not involved and, no other ground of jurisdiction appearing, the cause was transferred to the Kansas City Court of Appeals. There was really less ground for claiming that title to real estate was involved in that case than in Lawson v. Hammond, supra. The court could not on a motion to quash an execution try the question of whether or not the land claimed by defendants to be held by them in trust for one religious body, was liable to be sold under execution to satisfy a judgment against what was claimed to be another religious body.

Thus it will be seen that whilst in some of the cases that have been before us on the question of jurisdiction there has been a question of homestead or no homestead, and the court has held in those cases that that question was not one of title to real estate, yet this is the first case that has come before us in which the judgment to be rendered will decide whether or not the defendant in execution is entitled to hold the particular piece of property as a homestead exemption. There is more reason for the contention that title to real estate is involved in this case than there was in any of the cases above mentioned, because in this case if the judgment is against the defendant it will be a direct adjudication that he is not entitled to hold that particular

piece of real estate as his statutory homestead and it will pass under the sheriff's hammer, and on the other hand if the judgment is in his favor he can, so far as this plaintiff claiming under this execution is concerned, hold the property by the right which the homestead exemption statute creates. Is that peculiar statutory right a title to real estate? The precise question we are now considering was not specifically answered in either of the cases above decided but the reasons given by the court for its rulings in State ex rel. v. Elliott, 180 Mo. 658, and Lawson v. Hammond, 191 Mo. 522, apply with full force to this case and we cannot now say the title to real estate is involved in this case without overruling the two cases just mentioned and that we are unwilling to do.

On the trial of the issues involved in this motion the court will begin with the necessary concession on the part of both parties that the title to the property is well vested in the defendant. But the defendant says, if the plaintiff is to have his way my title will be divested; that brings us to the very point of the controversy. Defendant's title will not be divested by the judgment in the case, but the judgment will leave the defendant's property exposed to the sheriff's levy and the result of that levy with the sequence may be to divest the defendant of his title. But that is the indirect not the direct effect of the judgment.

On the hearing of this motion the court was required to find an answer to these questions: is the defendant the head of the family, does he live on these premises as his family home, is the property within the limit of value and area prescribed by the statute, did his title and occupancy as a homsestead exist before the debt on which the judgment is founded was incurred, and has it so continued down to date?

We hold that in the trial of those issues and the

judgment to be rendered on the findings either way the title to real estate is not involved.

The motion to transfer to the Kansas City Court of Appeals is sustained, and it is ordered that the cause be so transferred.

*Gantt, C. J., Burgess* and *Fox, JJ.,* concur; *Lamm, Graves* and *Woodson, JJ.,* dissent.

### DISSENTING OPINION.

GRAVES, J.—We cannot concur in the opinion of Judge VALLIANT in this case. However, his statement of the case, as to the facts, is correct, even to detail, and his conclusion as to the exact question involved is correct. We differ with him as to his conclusion of law. We have no desire to curtail the jurisdiction of the appellate courts on the one hand, nor to add to our jurisdiction upon the other. Such is the spirit of the court. If the Constitution places the burden of hearing these cases upon this court, we, and each member of the court, feel that we should assume it, but if placed upon the Courts of Appeal, we feel and know that the issues will be as fully and ably determined as we could hope to do, so that the whole issue is one of pure law, and of our views thereon and not otherwise.

The question in this case is, what is the character of the homestead right given by our statute? Is it an interest in real estate, amounting to, "a title to real estate," within the meaning of section 12, article 6 of our Constitution, or is it not? In other words, is the homestead interest a "title to real estate?"

With due deference to the cases heretofore passed upon by this court, the exact question here involved has never been discussed from principle. Judge VAL-LIANT, with diligence and ability, has found and reviewed them all, but in none of these cases is the homestead right, in its character and nature, fully discussed.

If a homestead interest is "a title to real estate" then the jurisdiction of this case is in this court. If not it is in the Court of Appeals. As a lawyer we would never try a homestead right upon a motion, for the reason that, in our judgment, a trial of that fact, if against us, was final, and as a judge, upon this point we have not been further enlightened, save by the opinion of Judge VALLIANT, wherein he admits that if a motion is filed, raising the question, and such question upon trial is determined against the party filing the motion, the homestead interest, whatever it be, is gone. In this he is correct, for as we understand the law of *res adjudicata,* where a question of fact has been determined, by a court of law having the necessary jurisdiction, such question cannot be further litigated between the parties or their privies. This court has so held. [Johnson v. Latta, 84 Mo. l. c. 142; State ex rel. Waters v. Hunter, 98 Mo. 386; Bennett's Admr. v. Russell, 39 Mo. 152; Ridgley v. Stillwell, 27 Mo. 128.]

Now, in the case at bar, this defendant had the right to move to quash the levy upon his homestead— if he chose that method of raising the issues. He might have waited, and in practice it might be considered the better plan, until the sale was made and an action was brought in ejectment to oust him. Suppose this defendant had waited until the sale had been made before asserting that the house and lot was his homestead, and then when the purchaser at the sale brought his action in ejectment for the property, the defendant had filed his answer, alleging, as he has alleged in the motion, that the levy was void, and therefore the sale thereunder was void, because the property was his homestead. Such answer would be proper and if the facts were shown would defeat the action. If appeal were taken by either side, in such action in ejectment, no one would question for a moment that the jurisdiction would be in this court. Now what is the difference be-

tween the fact to be determined in the supposed case, and the case at bar? None, whatever. In either case you determine the one question as to whether or not there was a homestead interest. In the one we say there is jurisdiction in this court, and in the other we say not, when as a matter of fact the same question is involved in both, i. e., was the house and lot the homestead of the defendant, at the time of the levy thereon? And further, in this identical case, suppose the case is transferred, and the Court of Appeals says that there is no homestead, then in the view of Judge VALLIANT in which we think he is correct, the homestead is gone, and that question of fact so litigated, whether upon motion or otherwise, is *res adjudicata,* not only as to him, but as to his wife and children. By the peculiar wording of our statute, the wife and children take the homestead through the husband, and in law are his privies. [R. S. 1899, sec. 3620.] This statute reads:

"If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to such widow and children, and shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

Now what vests, a mere exemption privilege, or an estate in lands? An exemption privilege is personal and does not pass by the law of descent to the widow or heirs. Nor does it "vest" in them. We, as members of a court, do not talk of personal privileges or immunities *vesting* in our widows or heirs, nor does the Legislature mean to say that it intended to *vest* a mere personal privilege or immunity in the widow or heir. But further, this court has always held that the widow's estate in a homestead is, in effect, a life estate, and how could a life estate vest in the widow from the husband, if the homestead interest of the husband .was a mere immunity from levy and sale? Again, the statute, section 3616, says: "The husband shall be debarred from and incapable of selling, mortgaging, or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void." What does this mean? Does it mean that the husband cannot yield up a personal privilege or immunity granted to him, or does it mean that for the public welfare the State has stepped in and said to him, that in your conceded fee simple estate, or less estate, if such it be, we have created another estate for the benefit of yourself, your widow and your children, and this estate, i. e., title to this land, you cannot sell except as we have provided, and in the event of your death this estate, which we have created, as a matter of public policy, shall vest in your widow and children, during the minority of the children, and afterwards for the life or widowhood of your widow? The statute does not undertake to create a separate immunity and privilege in the widow and children, but says the "homestead to the value aforesaid shall *pass to* and *vest in* such widow or children, until the youngest child shall attain its legal majority and until the death of such widow." The right of the wife is limited to wid-

owhood under the present statute, but this still leaves in her an estate for years, which may or may not be determined prior to death, dependent upon a contingency, i. e., marriage. If she continues a widow, her estate is for life. It is, to say the least, an estate in lands, and when in controversy, her title to lands is involved. All of which passes and vests in her through her husband. Again, the same section provides for the joint occupancy of these lands by the widow and children, until such time as the youngest child becomes of age, and then the sole occupancy by the widow until her death, or her remarriage. What did the Legislature mean by joint occupancy? A joint occupancy of a mere right or immunity given to the husband or of a title to an estate or interest in lands, which the statute has created, and in the language of the law has vested in the widow and children? In our judgment immunity for the widow and children can be created by legislative power, but it is straining a point to say that we *vest* an immunity heretofore created in the widow and children. Such is not the ordinary acceptation of the word "vest," nor in our judgment is it the legal acceptation.

And, further, this same section 3620, in speaking of the estate or interest which "shall pass to and vest" in the widow and children, further says, "And shall continue for their benefit without being subject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime." What did and what could the Legislature have meant by this language? Did it mean that a mere exemption or immunity from debt "shall continue for their benefit, without being subject to the payment of the *debts* of the deceased," or did it mean that this particular estate in the land, i. e., homestead, should not be so subjected? Does it require any strained construction to determine the meaning of this language? In plain parlance, would we

say or understand that a mere exemption or immunity from debt shall not be "subject to the payment of the debts of the deceased?" We must conclude that there was a property right, which might be subject to the payment of debts, and if so, it is a right or interest in real estate. This whole question must be determined largely by our statute and the terms thereof.

In our judgment the homestead right, in the husband, is an estate of freehold, i. e., for his life, unless legally disposed of during his life, and if not so disposed of such estate vests in the widow and children, as aforesaid. It is not always based upon a fee title, but may be based upon and carved out of a title less than a fee, but out of whatever interest in lands it is carved out of or from, it nevertherless is an interest in the land and when questioned in litigation the title to real estate is involved.

We know that there is diversity of opinion among the courts respecting the exact character of this peculiar interest in lands denominated homestead, such character depending largely upon the respective statutes. [21 Cyc. 460.]

In Nebraska, McLain v. Maricle, 60 Neb. 353, it is characterized: "A special or particular interest in real estate created by statute, and the character of the interest thus acquired has a marked variance in the different States." In some States, as Georgia, Harris v. Glenn, 56 Ga. 94; Kansas, Ellinger v. Thomas, 64 Kan. 180; Kentucky, Brame v. Craig, 12 Bush 404; North Carolina, Thomas v. Fulford, 117 N. C. 667; South Carolina, Ex parte Ray, 20 S. C. 246, the homestead right has been looked upon as a mere exemption and not an interest in lands. In others it has variously been declared an estate in lands ranging from a fee down to a freehold estate: Hirsch v. Prescott, 89 Fed. 52; Jones v. DeGraffenreid, 60 Ala. 145; Snell v. Snell, 123 Ill. 403; Browning v. Harris, 99 Ill. 456; Swan v.

Stephens, 99 Mass. 7; Abbott v. Abbott, 97 Mass. 136; Helm v. Kaddatz, 107 Ill. App. 413; Sayers v. Childers, 112 Iowa 677; Chase v. Abbott, 20 Iowa 154; Fauver v. Fleenor, 13 Lea (Tenn.) 622. So it would seem that we must construe this interest according to our own statutes, and in the light of these, let us see whether this interest, i. e., homestead, is a mere exemption, or an interest in land. We had a statute formerly, which "passed to and vested in" the widow a fee. [Skouten v. Wood, 57 Mo. 380.] After this opinion, the statute was amended in 1875, and placed in its present form, except we have later made the widow's interest terminate with her remarriage, but if she did not remarry, then to terminate with her death. Under the act of 1875, in West v. McMullen, 112 Mo. l. c. 411, GANNT, P. J., said:

"We think the statute vested in the widow and minor children, if any, an estate for her life, and during their minority, and not a mere right of occupancy. Decisions upon statutes essentially different from ours throw no light upon the question. But our own decisions and those of the Vermont courts and of New Hampshire, under the act of 1868, determine that the homestead is a life estate in land, and not a mere exemption dependent upon occupancy, and being a vested life estate, the widow may use or rent it as she sees fit during her life. [Rockhey v. Rockhey, 97 Mo. 76; Freund v. McCall, 73 Mo. 343; Lake v. Page, 63 N. H. 318; Skouten v. Wood, 57 Mo. 380, and cases cited; Day v. Adams, 42 Vt. 516.]"

Bear in mind this classifies the right of the widow and children as an estate in land, not as a mere exemption or immunity from debt. Such a construction gives life to the statute which provides that the homestead of the husband "shall pass to and vest in" the widow and children. We can understand how an estate in lands can "pass to and vest in" a given per-

son, but can hardly understand that the Legislature had in mind the idea of merely passing to and vesting in the widow, children, or heirs at law, a mere personal privilege or immunity from debt given to the husband.

Again, Black, J., in Hufschmidt v. Gross, 112 Mo. l. c. 656, in discussing the same section discussed in the case by Gantt, P. J., viz., sec. 2693, Revised Statutes 1879, says:

"This section makes the homestead, not merely a right of exemption, pass to and vest in the widow and minor children, without being subject to the payment of the debts of the deceased. The same section speaks of this interest which is to pass to the widow and minor children as an estate. This estate which passes to them is not conditional, that is to say, it is not made to depend upon occupancy by her or the children, as in the case of the homestead exemption under the first section. Again, section 2694 provides that, on setting out homestead and dower to the widow, the homestead must be first set out, and dower in the residue of the lands of the deceased is diminished by the amount of the interest of the widow in such homestead so set out to her. [See, also, Bryan v. Rhoades, 96 Mo. 485.] It was not the intention of the Legislature to substitute a mere exemption right for the dower estate or any part thereof."

It is true the section now in force, section 3620, is not in exact phraseology as was the original act of 1875, but we have this significant clause therein in addition to the ones above quoted: "And upon her [the widow's] death or remarriage it [the homestead] shall pass to the heirs of the husband." What shall pass to the heirs of the husband? The mere exemption or immunity from debt, or some estate, title or interest in the land. We can see no escape, under our statute, from the conclusion that the homestead is an interest in the land, and that in a case, as the one at bar, where the

sole issue is, was there or was there not, a homestead, an interest or title to real estate is at stake and in issue, so much so as to give this court the jurisdiction.

West v. McMullen, 112 Mo. 405, is quoted with further approval by GANTT, J., in Spratt v. Early, 169 Mo. 1. c. 363. And again, by Fox, J., in Clark v. Thias, 173 Mo. 649. True it is that the point here urged was not necessarily involved in the approval thus given to that case, in the latter two cases. But we have always held, as in the latter two cases stated, that a conveyance of a homestead although made for the purpose of defrauding creditors was not void and would convey title. Why? Because the instrument making the conveyance conveyed a mere exemption or immunity from debt, or because it conveyed some substantial interest in real estate, created by the statute? We think it the latter rather than the former.

And further, if as we hold in the cases above cited, the right when vested in the widow is a life estate, and therefore an interest in and title to lands, by what process of reasoning can we say that the interest of the husband is less than that held by the wife? If it is an estate or interest in lands in one it must be in the other.

But beyond all this what does ''title to real estate'' mean? It does not mean that one must have a fee simple interest therein, but it certainly goes to the extent of an estate for life or for years, which includes the interest of a homestead. The homestead once fixed is a life interest in the husband, with the power to alienate by deed or mortgage, provided he be joined therein by the wife, and with the further power to lose it by abandonment. It is a freehold estate, which may be determined by the act of the owner. Its duration is uncertain, distinguishing it in a way from an estate less than a freehold. It may last for life or it may not. Its termination is uncertain. ''Title'' does not necessarily mean a fee interest, but covers all the lesser estates in

land. [See vol. 8, Words and Phrases Judicially Defined, subject, Title, page 6980, et seq.]

We have no disposition to prolong this opinion further than to present the idea firmly fixed with us, and that is that a homestead interest is an estate in lands, and where, whether upon motion to quash a levy under execution, or in a suit in ejectment, such right is the one to be determined, then the title to real estate is involved.

We do not concur with Judge VALLIANT, when he says the only questions involved on this motion are "(1) is the defendant the head of a family? (2) does he live upon these premises as his family home? (3) is the property within the limit of value and area prescribed by the statute? (4) did his title and occupancy as a homestead exist before the debt on which the judgment was founded was incurred, and has it so continued down to date?" These questions were involved, it is true, but the ultimate question to be determined in the case, simply stated, is this: Did the defendant have a homestead? Answers to all the questions suggested by Judge VALLIANT simply tend to prove or disprove the ultimate fact to be found, viz., was there a homestead? Of course, all these questions would have to be answered in the affirmative before the ultimate question could be answered in the affirmative, but that does not change the proposition that the real question and the ultimate question, thus on trial, was, did this man have a homestead interest?

If you set up the claim of an estate by curtesy you have four things to prove: (1) marriage, (2) seizure during coverture, (3) issue born alive, (4) death of wife; yet none of us would say, because these four simple issues were the only ones to be passed upon by the court, title to real estate was not involved. The ultimate fact in such case would be, was there curtesy? and

if so title to real estate would be involved, although it would be but a life estate. In the case at bar we have a life estate, which may be terminated of course by the act of the owner. All life estates may be so terminated.

The only question in the case at bar can be thus stated: Is a homestead interest, as created by our statute, an interest in real estate? If it is, then title to real estate is involved. If it is a mere exemption, then title to real estate is not involved. We think it is an interest in real estate, if we have been able to analyze our statutes, and so believing, we think the jurisdiction of this case is in this court, and the motion to transfer should be overruled. *Lamm* and *Woodson, JJ.,* concur in this opinion.